Good morning. May it please the court, my name is Siri Fried and I'm here on behalf of the appellant Alvin Pennue. We raise two issues for the court's consideration following Mr. Pennue's conviction after a jury trial of convictions on two counts of violation of 18 United States Code section 472 which is passing altered or counterfeited currency and one count of inducing the fraudulent interstate transportation of funds in excess of $5,000. And the facts of the case had to do with a scam. It had to do with pretending that you could convert what appeared to be money painted black into usable U.S. currency by pressing it together with real dollar bills and doing some sort of a hocus pocus laundering kind of thing. And the idea was to induce, well in this particular trial there were two different transactions that were evidence that was put on. One incident involving the interstate transportation conviction involved a man by the name of Wendell Bradford who was induced to bring $5,000 of his own money in hopes of converting that $5,000 into untold riches and in fact it turned out that he was induced to take a bunch of soggy black construction paper. The other case involved a stink where a person contacted, a person who was contacted by either Mr. Pennue or one of his confederates, there were three people charged in this case, only one of whom went to trial. The other two were left before the case was tried and were never apprehended or maybe one has been apprehended but has not been tried. In any event, there was a person who was contacted then contacted the Secret Service who then came in and pretended to be interested in them. There was a large setup which ended up resulting in a failed, a failed transaction that resulted in the arrest of the people who were charged in the indictment. So this is not a case where Mr. Pennue is arguing that the evidence was insufficient to convict. It's a case where there are two issues. One is whether the jury was properly instructed about how to apply the reasonable doubt standard and the second whether the court calculated the sentence correctly. Turning to the first issue, the reasonable doubt standard, it's Mr. Pennue's, the appellant's contention that the jury instruction on reasonable doubt was conceitedly incorrect. The government doesn't defend the instruction by saying it was right. It was definitely wrong because what it ended up doing was defining, and it's important I think to note that the part of the jury instruction that was wrong was that it involved the actual definition of reasonable doubt. It actually, this was a case where the judge undertook to define the term and then defined it incorrectly by defining essentially the absence of reasonable doubt twice. By dropping a word, by dropping a negative, by dropping the word cannot from his oral definition given in the courtroom. It's our position that the jury was not in a position on its own to fix that definition, that misdefinition during the course of its deliberations and that one handed a wrong definition of reasonable doubt and a definition that was sort of twice stacked in the government's favor in the sense that it twice defined the absence of reasonable doubt as opposed to ever defining the presence of reasonable doubt. But the jury was never in a position to be able to come to a verdict using the right deliberative process. Whether or not its verdict was correct in terms of what was supported by the weight of the evidence adduced against Mr. Panu, it's a structural problem with the way the case proceeded through deliberations because of this important error in the way that the jury was instructed. Well, counsel, doesn't that presume that the error altered the jury's understanding of that conclusion? Yes, there's concededly the judge misspoke. There's no question about that. But don't we have to look at the charge as a whole to conclude whether or not it is what the jury likely understood the charge to be viewed as a whole? Well, yes. And of course, the court should and will look at the instructions as a whole. What I would say... And isn't that affected somewhat? Or isn't one datum that bears on that? The fact that there's no objection to the charge? The defense counsel obviously didn't understand the charge as faulty. There should have been an objection, obviously. No, but there wasn't. No, that's right. And there was not. I will say this. I think that this is the explanation for why there wasn't an objection. And it sort of has to do, I think, it ties into the government's argument about why a written instruction, quote, unquote, cures this problem. But I'm not getting to the written instruction. If you read that charge front to back as a whole, the charge that was given orally from the bench, it's hard for me to believe that a jury could come away with a misunderstanding about the meaning of reasonable doubt, particularly since the misspeaking was in the judge's attempt to create a parallel. So he left out cannot in one sentence, put can in the other. And the parallel got blurred. But reading the charge as a whole, it's clear that the judge told the jury about reasonable doubt, that it was the government's burden. It didn't really say anything that lessened the force of the reasonable doubt instruction. There's a sentence that that's wrong. Well, what the judge did, though, was tell the judge, the judge misdefined the concept by leaving out an important negative. And what the rest of the instructions that the court gave really went to the burden of proof as opposed to the definition of reasonable doubt. I mean, there was reiterations again and again about a strict and heavy burden and probabilities are not enough. Things like, things of that nature, which go to the burden of proof, which is a separate issue than what actually, what a reasonable doubt actually consists of. Is that true of the written instruction as well? I'm sorry? Is that true of the written instruction as well? In other words, the written instruction, as I understand it, did speak to the definition of reasonable doubt itself. Well, yes, it did. That's right. And what it did was that it created, as Judge Zellier referred to, to a parallel construction. The trouble is, there wasn't a... No, no, not the judge's, not the problematic instruction. Yes. Wasn't there a curative instruction, an additional instruction that was given to the jury that does talk about reasonable doubt? The written instruction that was given to the jury was, I'm not going to say it was wrong. I mean, that is, it did create this parallel that the judge was trying to do orally. The problem with that, of course, goes to, I think, what the government's argument is, which is that if they had the written instruction, this is all fine and dandy, and what are we worried about? The problem with that line of thinking is that you cannot presume that the jury ever read the written instruction. So it's as if the real posture of this case, the way it should be analyzed, we would submit from this Court's perspective, is as if the written instruction was never given to them at all, because you can't presume they looked at it. Counsel, I believe that the transcript shows that later, reasonable doubt was explained in these terms. In order for the government to prove Mr. Penue guilty of an offense, it must convince you beyond a reasonable doubt that it has proved each and every element of the offense. Possibilities or even probabilities are not sufficient, and it is not sufficient for the government to establish a probability, though a strong one, that a charge is more likely true than not true. That those were both in the written instructions and those were delivered properly orally. Again, I believe that that's really emphasizing the burden of proof, though, as opposed to the concept of what reasonable doubt is, which, let me tell you what the Court actually said. He said reasonable doubt exists when, after weighing and considering all of the evidence using reasonable and common sense, this is what he should have said, jurors cannot say that they have a settled conviction of the truth of the charge. Okay, you have a minute left, if you'd like to address the sentencing issue. Yes. I think what this argument really comes down to is what's the proper scope of relevant clearly only involved a $5,000 actual loss and a $5,000 intended loss, and where there was a completely different victim, and where neither of these two transactions relied on the other for their success or for their completion, and what the sentencing judge actually ended up doing here was doing an end run around the clear prohibition when it comes to altered currency cases that you only look at the value of the altered currency. Here there's no question that the value of the altered currency, the blackened currency, was well under $1,000. I mean, it was a couple hundred dollars here, a couple of $20 bills there, and instead what they did was they turned this into a $130,000 loss when in fact there was really only a $5,000 loss, which would not have triggered an enhancement. Mr. Lockhart. Good morning. Donald Lockhart for the government. So in addition to the surrounding oral instructions on reasonable doubt that Chief Judge Lynch just quoted, we rely on six other factors, probably the next most important of which is that if you look at the two key sentences at issue here, as Judge Selley alluded to, we're really talking about a definition of reasonable doubt defined first in positive terms, and then it's defined in negative terms. You have a sort of yang-yin construction, a parallelism that the judge is trying to create, and in fact the judge transitions between these sentences by saying, on the other hand, to make clear that he is drawing a compare and contrast. When the jury heard the second of the two sentences and heard the can in that sentence, clearly it would have made clear to them that a cannot belonged in the first sentence. So the cannot is implied in the first sentence, and the two sentences, to quote a case written by Judge Selley back in the 80s, the two sentences parse sensibly only if you include that missing cannot, just as in the LeBron Gonzalez case that I'm referring to, the sentence there parsed sensibly only if the missing word if was included. It's just something that the jury would have, in essence, heard, and that's an all- Can I just ask you what that position would come down to? So suppose there was an objection at trial to this instruction, and the judge said it's fine. Well, in that situation we would still be left with the Victor v. Nebraska test of the Supreme Court, which says that even in that situation involving a preserved error, the proper inquiry is not whether the instruction could have been applied in an unconstitutional manner, but whether there is no reasonable likelihood that the jury did so apply it. So even in that situation we would be claiming on appeal. In the case of a preserved error where the judge just refused to give a new instruction, even though it was clear he omitted that word, we'd still be arguing that the jury in all likelihood bridged that gap and heard that word cannot. Now, it's hard to imagine a judge would say I'm refusing to give a new instruction, even though I omitted the word. Most judges would go back and correct it, but even in the scenario you're talking about, I believe we would still prevail. But there are other factors, including the surrounding oral instructions on reasonable doubt, which we quote at page 17 of our brief, and which Chief Judge Lynch disquoted. There's also the fact that- You had six things. You've covered two of them.  Okay, let's go. It's going to be more rapid than I was yesterday. So the attorneys here didn't object, which is also a sign that nobody really heard this to be a missing word at the time. There is the fact that the judge also emphasized the presumption of innocence elsewhere in its instructions. There is also the fact that there were written instructions submitted to the jury which contained this missing word cannot. No one can test those instructions. In fact, if you look at the record, the judge actually tells the jury during oral instructions, put your notebooks to one side. You're not going to need to take notes at this phase because I'm going to give you the written instructions which you can refer to. Do you have any case, Mr. Lockhart, in which written instructions were found to be sufficient to correct an erroneous oral instruction? We're not saying that a written instruction is a panacea and that in every case a written instruction can compensate for a flawed oral instruction. We do cite many cases in the brief, however, which say that that is one among several relevant factors. And that's all we're touting it as. We're not saying that this is the sine qua non of this appeal and the sort of fulcrum on which you were decided. It's just another thing that should give you comfort that the jury in this case, consistent with Victor, Nebraska, did not misapply the reasonable doubt test. But there are a couple other factors. The next one is that the jury sent out two notes during deliberations and yet none of those notes expressed uncertainty about the reasonable doubt standard. And the final point we mentioned in the brief is that the case involved, from our standpoint, overwhelming evidence. Now, you may ask, well, are you making a sort of lack of prejudice argument, Mr. Lockhart, when you make that point? And the answer is no, we're not going that far. What we're really saying is that if you have a case involving a close case, the jury is perhaps more apt to use the reasonable doubt standard as a scale tipper. But in a case where the evidence is overwhelming, as it is here, it's just less likely that the jury is going to use reasonable doubt as sort of the be and end all of its analysis of the case. So unless there are further questions about the first issue, I'll talk briefly about the issue and then rest on the brief. The second issue, the sentencing issue, is waived or forfeited because in the district court, the defense attorney said flat out that it was axiomatic that relevant conduct could be considered in these circumstances. He just made a narrow factual claim to the effect that $25,000 in the relevant conduct intended losses couldn't be considered because it was unlikely once these guys defrauded the agent that they would be able to defraud this other man named Falugo because the scheme would have been uncovered at that point. That's not the claim on appeal now. The claim on appeal is a direct challenge to the use of relevant conduct at all in this circumstance. And the problem with the defense position is that it ignores that the defendant was convicted of a fraud count, that is the 2314 count. That requires you to apply 2B1.1, the fraud guideline, and the case law is very clear that you can consider intended loss in relevant conduct in the case of that guideline. The Third Circuit case relied upon by the defense concerns a different guideline which applies just to the 472 currency offenses. Here, those offenses, the 472 offenses dropped out of the picture with the grouping methodology. You had a group for the fraud offense and you had another one for the currency offenses. Because the fraud offense group produced the higher offense level, the currency group dropped out of the picture entirely and the fraud count, in effect, drove the sentence. And that count clearly did allow for consideration of relevant conduct and intended loss. And there's really no dispute that the defendant in this case intended to inflict a further $125,000 losses, $100,000 on the undercover agent, $25,000 on Mr. Falugo. So if there are no further questions, we'll rest on our brief. Thank you both.